## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| **RICKEY BELL, Individually and on Behalf of All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 7:17-cv-49** |
| **V.** | § § | **JURY TRIAL DEMANDED** |
| **JAN RESOURCES, LLC, KATHRYN JACOBS-HELLER, JAMES LOFTON, and JAMES LEE.** | § § § § | |
| **Defendants.** | § § | |

### SETTLEMENT AGREEMENT AND RELEASE

WHEREAS on March 7, 2017, Plaintiff Rickey Bell (**"Plaintiff"** or **"Bell"**) filed the above-captioned civil action (the **"Action"**) in the United States District Court for the Western District of Texas, Midland Division, individually and on behalf of himself and all other similarly-situated current and former employees against Defendants Jan Resources, LLC, Kathryn Jacobs-Heller, James Lofton, and James Lee (**"Defendants"**) (together, the **"Parties"**);

WHEREAS, in the Complaint, Plaintiff asserts claims on behalf of himself and all similarly situated employees for alleged unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (**"FLSA"**);

WHEREAS, Defendants deny Plaintiff's allegations and also deny that litigation of this case as a collective action is appropriate and expressly reserves the right to oppose class certification and to seek decertification under Section 216(b) of the FLSA or any other applicable Rule or law in the event this Agreement does not become final;

WHEREAS, after the exchange of necessary documents and a lengthy negotiation process, the Parties agreed in principle to the terms of a settlement of the above-captioned pending Action on a collective action basis;

WHEREAS, it is the desire of the Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims that have been brought in the pending Action or that reasonably arise out of the facts alleged in the pending Action, including any statutory or common law claims relating to the payment of wages, including those on behalf of Plaintiff individually and those on behalf of any other similarly-situated current and/or former employees of Defendants;

NOW, THEREFORE, in consideration of the mutual covenants, promises and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

This Settlement Agreement and Release (the **"Agreement"**) is made and entered into by and between Plaintiff, individually and on behalf of himself and all others similarly situated, and Defendants. Once effective, this Agreement shall be binding on Defendants, Plaintiff and the Class Members who timely execute the Release as provided herein. This Agreement is subject to the terms and conditions stated, and further shall not be effective without the approval of the Court or in the event that the Court makes material alternations to the terms of the settlement or this Agreement.

**DEFINITIONS**

1.     **Counsel**. **"Class Counsel"** refers to Sosa-Morris Neuman Attorneys at Law; and **"Defendants' Counsel"** refers to Sturm Law PLLC.

2.     **Settlement Class**. The **"Settlement Class"** or **"Class"** is defined as current and former employees of Defendants in the position of Operator, or similar title, who were paid a salary and/or a day rate from June 5, 2014, to the present. A **"Class Member"** is an individual falling within the definition of the Settlement Class. A list of all Class Members is attached hereto as Exhibit A. This list identifies each and every member of the Class and shall control to identify all Class Members.

3.     **Class Period**. The **"Class Period"** is defined for each Class Member as the period during which the Class Member worked in the Operator role and was paid a salary and/or a day rate by Defendants without receiving claimed applicable overtime premiums. The Class Period shall begin on the earlier of (1) June 5, 2014, or (2) the first day the Class Member was employed by Defendant, and shall end on the earlier of: (1) the date the Class Member separated employment with Defendant; or (2) the date the motion for final approval of the settlement is filed.

4.     **Effective Date**. The settlement embodied in this Agreement shall become effective on the **"Effective Date,"** which is defined as the first business day after the last day of the period for appeal of the final order approving the Agreement in substantially its present form, or if an appeal has been filed, the date on which the appeal is dismissed or the order subject to appeal becomes final, including all conditions precedent and reserved rights as described herein. Notwithstanding the foregoing, if the Parties agree in writing not to appeal following the final order approving the Agreement, the Effective Date shall be the first business day after date of the final order approving the Agreement. Bell's express agreement to timely execute the Release and his individual employment release are conditions precedent to this Agreement.

5.     **Action**. **"Action"** shall refer to this lawsuit, *Rickey Bell v. Jan Resources LLC, et. al.*, Cause No. 7:17-cv-00049, in the United States District Court for the Western District of Texas, Midland Division.

**I.    SETTLEMENT AMOUNT**

6.     **Settlement Fund**. Defendants agree to make available up to one-hundred and fifteen thousand dollars ($115,000.00), inclusive of enhancement payments, attorneys' fees, and expenses/costs, to settle this Action. This sum is the **"Settlement Fund."** Under no circumstances shall Defendants be required under this Agreement to pay any amount more than the Settlement

Fund.  Defendants shall not be required to set aside or deposit any amounts until the Court has approved the settlement and authorized the distribution of Notice and Individual Payments in accordance with Exhibit A showing each Class Member's pro rata share of the Settlement Funds.

7.    **Fairness of Settlement**.  Class Counsel have conducted a thorough investigation into the facts of the case, including an extensive review of daily timecards, payroll records, other documents, and data produced by Defendants to Plaintiff, and have diligently pursued investigation and prosecution of Plaintiff's claims against Defendants.  Based on their own independent investigation and evaluation, Class Counsel is of the opinion that this settlement with Defendants for the consideration and on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, and potential for certification to be denied.  In making these determinations, Class Counsel and Plaintiff have not relied on any representations of Defendants or Defendants' Counsel that are not expressly stated herein.  Defendants and Defendants' Counsel also agree the settlement is a reasonable and fair compromise of disputed issues.

8.    **Settlement Payments**.

a.    **Net Settlement Fund**.  The **"Net Settlement Fund"** is defined as the Settlement Fund less any enhancement award made to the Plaintiff, and less attorneys' fees and expenses/costs payable to Class Counsel.  Payments made available to Class Members from the Net Settlement Fund will be determined pursuant to the procedures set forth in subsection 8(b) below.

b.    **Determination of Each Class Member's *Pro Rata* Share**. Class Counsel as the claims administrator shall determine the *pro rata* share of the Net Settlement Fund (**"Individual Payment"**) that will be made available to each Class Member as follows:  Based on Defendants' payroll and time records provided to Class Counsel, which Class Counsel has verified to its satisfaction, Class Counsel (or the third-party claims administrator) shall determine the total amount of damages claimed by each class member by making the following (**"Damage Calculation"**) for each class member: (i) calculating the total number of hours above forty (40) worked per workweek during the Class Member's Class Period, according to Defendants' records as vetted by Class Counsel; (ii) calculating the total pay received by the Class Member on a week by week basis; (iii) for each week during the Class Member's Class Period where the Class Member worked over forty (40) hours, dividing the total pay received by the total hours worked to arrive at the regular rate of pay; (iv) dividing the regular rate of pay by two to calculate the overtime premium and multiplying the overtime premium by the number of overtime hours worked in the corresponding week; (v) the sum of the Class Member's Damage Calculation shall then be used as a denominator to each individual Class Member's Damage Calculation for purposes of assigning a percentage to each Class Members' claim (**"Class Member's Percentage"**).  Each Class Member shall receive their assigned Class Member's Percentage times the Net Settlement Fund.  The amount of each Individual Payment will not be affected

by the number of Class Members who join the settlement. The Parties agree this is a fair and efficient method of calculating each Class Member's *pro rata* share of the Net Settlement Fund. Exhibit A includes a schedule listing each Class Member's Percentage, and maximum Individual Payment (based on the anticipated Net Settlement Fund value).

      **c.**    **Tax Allocation of Settlement Payments.** Each Class Member's Individual Payment shall be allocated as follows: (1) 50 percent shall be allocated to wage claims; and (2) 50 percent shall be allocated to all non-wage claims, including liquidated damages, interest and other claimed statutory penalties. Legally required payroll tax withholdings shall be deducted from the wage portion of each Class Member's Individual Payment, which shall be made net of these withholdings. All employer-paid and due taxes on the wage portions of this settlement shall be paid by Defendant. The non-wage portion of each Class Member's Individual Payment shall be paid without payroll deductions.

      **d.**    **Enhancement Award to Representative Settlement Plaintiffs.** Class Counsel will include in its unopposed motion to the Court for approval of the Class Settlement a request for an enhancement award from the Settlement Fund of two thousand five hundred dollars ($2,500.00) to Rickey Bell ("Representative Plaintiff") and Joaquin Garcia each and one thousand dollars ($1,000) to Curtis Woodruff and Tyrone Clemons ("Early Opt-in Plaintiffs" collectively, "Representative Settlement Plaintiffs") each for a total of seven thousand dollars ($7,000), in recognition of their role and participation as early opt-in plaintiffs and the more comprehensive release of their claims. The enhancement award shall be in addition to these Representative Settlement Plaintiffs' Individual Payment. No enhancement award shall be paid from the Settlement Fund to these early opt-ins until and unless the enhancement award is approved by the Court. The enforceability of this Agreement is not contingent on the amount of any enhancement awards up to seven thousand dollars ($7,000.00) that are granted by the Court. In further consideration of the enhancement award, the Representative Settlement Plaintiffs shall timely execute a general release of all employment and related claims (attached as Exhibit D).

      **e.**    **Attorneys' Fees and Expenses/Costs.** Class Counsel will include in its unopposed motion to the Court for approval of the Class Settlement a request for payment from the Settlement Fund of no more than forty-six thousand dollars ($46,000) in attorneys' fees and no more than two thousand dollars ($2,000) in litigation expenses/costs (including claims administration costs). No attorneys' fees and expenses/costs will be paid from the Settlement Fund until and unless the attorneys' fees and expenses/costs are approved by the Court. Plaintiff and Class Counsel shall not be entitled to any attorneys' fees or expenses/costs other than those awarded by the Court pursuant to this Agreement. Plaintiff and Class Counsel understand and acknowledge that any fee, expense, or cost payments made under this Paragraph will be the full, final, and complete payment of all attorneys' fees, expenses, and costs arising from or relating to the representation of Plaintiff, Class

Members, or any other attorneys' fees, expenses, and costs associated with the investigation, discovery, and/or prosecution of this Action. Plaintiff and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against Defendants for attorneys' fees, expenses, or costs arising from or relating to the individuals or matters identified in this Agreement. As further inducement to Defendants to enter into this Agreement, Plaintiff and Class Counsel warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for attorneys' fees, expenses, or costs including, but not limited to, bills of costs or requests for attorneys' fees, for any fees and/or costs arising out of this Action. Furthermore, Plaintiff and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorneys' fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with this Action, and that the terms of this Agreement shall fully satisfy any and all claims by any attorney arising out of, or by virtue of, or in connection with this Action. Nothing in this Paragraph shall preclude Plaintiff from appealing the allocation of Class Counsel's fees and expenses/costs should the sums awarded by the Court fall below those requested.

      **f.**    **Tax Reporting.** Defendants shall provide to each Class Member receiving (and accepting) an Individual Payment an IRS Form W-2 (for wages) and an IRS Form 1099 (for non-wages). Representative Settlement Plaintiffs will also receive an IRS Form 1099 for the enhancement award they receive. Defendants will provide Class Counsel with an IRS Form 1099 for the attorneys' fees and costs/expenses awarded to Class Counsel. Class Counsel shall provide Defendants with a completed IRS Form W-9 following execution of this Agreement. Class Counsel, Plaintiff, and Class Members are not relying on any information provided by Defendants concerning the tax consequences of payments made under this Agreement.

      **g.**    **Payment Date.** Within ten (10) days of the Effective Date, Defendants shall tender to Class Counsel the Class Members' Settlement Checks and all settlement funds as are approved by the Court according to the procedures set forth in this Agreement.

## II. COURT APPROVAL

      **9.**    **Court Approval.** The Parties agree that Class Counsel shall file, and Defendants shall not oppose, a motion(s) to certify an FLSA collective action for settlement purposes only and for Court approval of the Class Settlement. Defendants' Counsel shall be given Plaintiff's final proposed approval motion and related exhibits seven (7) days before Class Counsel expects to file, and the Parties shall agree on any changes required by Defendants' Counsel so that Class Counsel may accurately represent that the motion is filed unopposed pursuant to the local rules. Class Counsel shall file this Agreement under seal, supported by an appropriate motion. The Parties agree that the unopposed motion(s) shall ask the Court to enter a Final Order as follows:

    **a.**      Certifying the FLSA collective action Settlement Class, as defined above, for settlement purposes only;

    **b.**      Approving the settlement and this Agreement, adjudging its terms to be fair, reasonable and adequate;

    **c.**      Certifying Representative Settlement Plaintiffs as representative plaintiffs under 29 U.S.C. § 216(b) for purposes of settlement only;

    **d.**      Approving the Parties' proposed Notice, in the form attached hereto as Exhibit B, and the Parties' proposed Release (to be included on the back of a Settlement Check payable to each Class Member in the amount of his/her Individual Payment), in the form attached hereto as Exhibit C;

    **e.**      Authorizing the mailing of the Notice and Settlement Checks to the Class Members;

    **f.**      Approving an enhancement award of not more than seven thousand dollars ($7,000.00) in total to the Representative Settlement Plaintiffs in recognition of their role as representative plaintiffs, in exchange for their execution of a release in the form attached hereto as Exhibit D;

    **g.**      Approving Class Counsel's application for an award of attorneys' fees of not more than forty-six thousand dollars ($46,000) and reimbursement of expenses/costs of not more than two thousand dollars ($2,000);

    **h.**      Dismissing this Action on the merits and with prejudice and permanently barring all Class Members who participate from prosecuting any claims released by acceptance of the Settlement Checks according to the terms of this Agreement.

## III.   DUTIES OF THE PARTIES REGARDING NOTICE AND INDIVIDUAL PAYMENTS TO CLASS MEMBERS

    **10.**    **Claims Administration**. Due to the limited size of the Settlement Class, Class Counsel shall act as claims administrator, provided, however, that the Parties shall have the right to substitute a third-party claims administrator by mutual agreement (or by appointment of the Court in the event of a failure to agree). The claims administrator shall prepare a final accounting, to be distributed to the Parties one hundred and fifty (150) days after the Effective Date, logging all mailings, communications with Class Members in the course of claims administration, and the current status of any Notice, Settlement Check, or mailing to each Class Member (including returned as undeliverable, pending response, etc.). Defendants shall inform Class Counsel or the third-party claims administrator periodically of Settlement Checks negotiated by the Settlement Class to include in the final accounting.

    **11.**    **Address Records**. Defendants will provide to Class Counsel all information reasonably necessary for Class Counsel (or the agreed-upon third-party claims administrator) to

provide notice of this settlement to the Class Members, including the name, last known address, phone number (if on file), and date of birth (alternatively, social security number), for each member of the Settlement Class.

**12.    Calculation of Individual Payments**.  Class Counsel will calculate each Class Member's Individual Payment according to the method outlined in Paragraph 8(b), and shall share those calculations with Defendants' Counsel for discussion and approval, which shall not be unreasonably withheld, prior to filing the unopposed motion for approval of the settlement.

**13.    Distribution of Notice and Settlement Checks**.  Within ten (10) days after receipt of the Settlement Checks from Defendants, Class Counsel shall mail by U.S. Postal Service First Class Mail to each Class Member: (1) a Notice in the form attached as Exhibit B and approved by the Court, including any modifications made at the direction of the Court, and (2) a Settlement Check in the amount of that Class Member's final calculated Individual Payment, containing on its back the Release in the form attached as Exhibit C and approved by the Court, including any modifications made at the direction of the Court.

**14.    Negotiation of Settlement Checks**.  As explained in the Notice and Release (Exhibits B & C), each Class Member who endorses his/her Settlement Check and presents it for payment within one hundred and twenty (120) days of the date printed on the Settlement Check will thereby "opt-in" to the Settlement Class certified by the Court, will be bound by the Release as stated on the back of their Settlement Check, and will be bound by this Court's dismissal with prejudice.  Any Class Member who does not endorse his/her Settlement Check and present it for payment within one hundred and twenty (120) days of the date printed on the Settlement Check will not release claims and participate in this Action. The Settlement Checks shall bear on the front the language, "This check must be cashed within 120 days, after which it is void." The preclusive effect of this settlement on any future individual claims by those Class Members who do not negotiate their Settlement Checks will be determined by the court in which those claims are brought.

**15.    Undeliverable Notices and Settlement Checks**.  Any Notice or Settlement Check returned to Class Counsel as undeliverable shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, Class Counsel shall perform a standard skip trace to attempt to determine the most current mailing address and shall resend the Notice to that address, and may further perform reasonable online searches or telephone calls to verify the current address of any Class Member whose Notice or Settlement Check was returned as undeliverable.  The Parties agree that the deadlines contained herein shall not be extended for Class Members whose Notices were returned as undeliverable and re-mailed pursuant to this Paragraph.

**16.    Priority Claims to Individual Payments**. To effectuate a release in the event that a Class Member is subject to garnishment, levy, court or other legal order directing payment of any portion of the Class Member's Individual Payment to a non-party, the Class Member shall be mailed a letter in a form agreed by the Parties containing the Notice without an accompanying Settlement Check and with a Release requiring the Class Member's signature. This letter shall be mailed contemporaneously with the Class Notices and Settlement Checks. Any Class Member whose Individual Payment is subject to this process shall receive any portion of the Individual

Payment payable directly to the Class Member only upon execution and return of the Release to Defendant's Counsel within ninety (90) days of the date the letter was mailed. Any reduction in the amount received directly by a Class Member who is subject to this process shall not impact the value of the consideration provider for the Release.

17.     **Claims Period**.  The claims process is designed so that Class Members will have no less than ninety (90) days from the date of first mailing of the Notice within which to Opt In to the Class by endorsing their Settlement Check and presenting it for payment. This period may be longer than ninety (90) days, because the Class Members may negotiate their Settlement Checks for one hundred and twenty (120) days from the date printed on the Settlement Check.

18.     **Late Claims**.  At Defendant's sole discretion, Defendant may choose to honor and pay any Settlement Check endorsed by a Class Member and presented for payment more than and one hundred and twenty (120) days from the date printed on the Settlement Check.  If Defendant opts, in its sole discretion, to honor a late-negotiated Settlement Check, the Class Member will thereby receive his/her Individual Payment and be bound by the Release on the endorsed Settlement Check and the Court's dismissal with prejudice.

19.     **Unclaimed Funds**.  Any portion of the Settlement Amount that remains unclaimed after the expiration of the Claims Period shall revert back to the Defendant and Defendant shall retain all such unclaimed funds. Any reversion shall not impact the valid consideration offered for this Agreement and the Class Members' Releases for whom checks were not unclaimed.  However, the Class Members who do not endorse their checks, do not release their claims.

20.     **Effect of Payments**.  To the extent permitted by law, in no event shall any Individual Payment create any credit or otherwise affect the calculation of, or eligibility for, any compensation, bonus, deferred compensation, or benefit under any compensation, deferred-compensation, pension, or other benefit plan, nor shall any such Individual Payment be considered a benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contribution, or coverage under any other employment compensation or benefit plan or program.

## IV.     RELEASE BY THE CLASS

21.     **Released Parties**. **"Released Parties"** means: (i) Defendants; (ii) any current or former subsidiary, parent company, successor, assign, or division of Defendants; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, attorney, or employee benefit or welfare program or plan (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subsection (i) or (ii) hereof in any and all capacities (including, but not limited to, the fiduciary, representative, or individual capacity of any released person or entity).

22.     **Released Claims**. **"Released Claims"** means any and all claims, obligations, demands, costs, expenses, attorneys' fees, damages, actions, rights, causes of action, and liabilities of whatever kind and nature, character, and description arising out of state, federal, or local law, or emanating from statute, executive order, regulation, code, common law or other source, whether known or unknown, and whether anticipated or unanticipated, suspected or unsuspected,

contingent or non-contingent, which now exist, or heretofore have existed, based on or arising out of the allegation that Defendants did not properly compensate the Class Members for all hours worked, and including, but not limited to, all claims, causes of action, and liabilities asserted in, or that reasonably arise out of the subject matter of, this Action. The Released Claims specifically include, but are not limited to, claims under the Fair Labor Standards Act ("FLSA") and the Employee Retirement Income Security Act ("ERISA") (to the extent ERISA claims are derived from allegations set forth in the Complaint); all claims for allegedly unpaid wages, overtime, liquidated damages, interest, and penalty claims that were asserted or could have been asserted in this Action under federal or state law; claims under any state wage payment or collection law or state wage and hour statute requiring overtime or minimum wage compensation; wage and hour claims under state contract, tort, common law, and equitable principles; and compensation-related claims under any doctrine or law relating to good faith and fair dealing. The Released Claims shall include any claims which are derivative of the claims being released, and those claims not presently known to or suspected by the Class Members.

23.    **Release**. Upon endorsing a Settlement Check, a Class Member, on behalf of the Class Member and the Class Member's heirs, representatives, successors, assigns, and attorneys, shall be deemed to fully release and forever discharge the Released Parties from all Released Claims. This release and waiver of the Released Claims shall be the **"Release"** in this Action. Each Class Member who opts-in to the Settlement Class by endorsing and presenting for payment the Class Member's Settlement Check will, through the Class Member's endorsement on the Settlement Check, confirm the Class Member's consent to the Release. The Parties agree and acknowledge that the Release shall be binding upon endorsement of the Settlement Check by the Class Member, though the Settlement Check shall include only a summary approved by Class Counsel of provisions of the Release.  Moreover, the Released Parties shall release any and all claims they may have against the Class Members upon endorsement by the Class Member of the Settlement Check.

24.    **Excluded Claims**. The Release does not waive any rights that cannot be waived by law, including the Settlement Class Member's right to file a charge of discrimination with an administrative agency (such as the Equal Employment Opportunity Commission) and the right to participate in any agency investigation. Upon endorsing the Settlement Check, however, each Settlement Class Member does waive any right to recover money in connection with such a charge or investigation.

## V.    MISCELLANEOUS

25.    **Mutual Full Cooperation.**  The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement and to take such other action as may be reasonably necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's final approval of this Agreement.  In the event that the Court makes or requires material changes to this Agreement as a condition of final approval of the settlement of this Action,

the Parties will negotiate appropriate revisions in good faith and resubmit the Agreement for the Court's approval.

**26.** **No Admission**. Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed or offered as evidence of an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants or any Released Parties, who expressly deny any liability, wrongdoing, impropriety, responsibility or fault whatsoever. In addition, nothing about this Agreement shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in this Action or any other action. While Defendant has agreed that class certification is appropriate for settlement purposes, this stipulation is for settlement purposes only and Defendants maintain that class certification would be inappropriate if the parties were to continue litigating the case. If the Agreement is not finally approved by the Court, Defendants' stipulation to certification of the above class for settlement purposes only shall be null and void and may not be used or relied upon by Plaintiff, Class Counsel, or any Class Member for any purpose, and nothing from the settlement process, including documents created or obtained from the settlement process and settlement administration, shall be admissible evidence in this Action or used in any way contrary to the Defendants' or Plaintiffs' interests.

**27.** **Enforcement**. Any claim that a Party to the Agreement is in breach of the Agreement shall be filed exclusively in the United States District Court for the Western District of Texas, Midland Division.

**28.** **Governing Law**. All terms of this Agreement shall be governed by and interpreted according to the laws of the State of Texas and the United States of America, where applicable.

**29.** **Notices**. Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder by any party to this Agreement shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by first class or certified mail, or overnight carrier, return receipt requested, addressed to follow:

To the Plaintiff Class: John Neuman and/or Beatriz Sosa-Morris, Sosa-Morris Neuman, 5612 Chaucer Dr., Houston, Texas 77005.

To the Defendants: Charles A. Sturm, Sturm Law, PLLC, 712 Main Street, Ste. 900 Houston, Texas 77002.

**30.** **Construction**. The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's length negotiations between the Parties. This Agreement has been drafted jointly by counsel for the Parties and shall not be construed in favor of or against any party.

**31.** **Captions and Interpretations.** Paragraph titles or captions are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of any provision of this Agreement. Each term of this Agreement is contractual and not merely a recital.

**32.**    **Modification**.  This Agreement may not be changed, altered, or modified except in writing and signed by the Parties.

**33.**    **Integration**.  This Agreement, including Exhibits A, B, C, and D hereto, constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  The Parties expressly acknowledge that they have not relied on any representations or promises not expressly contained in this Agreement.  No rights hereunder may be waived except in writing.

**34.**    **Binding Scope; No Prior Assignment**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, and successors.  The Parties represent that they have not directly or indirectly assigned, transferred, encumbered to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth in this Agreement.

**35.**    **Excuse of Performance**.  Defendants shall not be liable for any delay or non-performance of its obligations under this Agreement arising from any act of God, governmental act, act of terrorism, war, fire, flood, explosion, or civil commotion.  Defendants shall not be liable for any reasonable delay of its obligations under this Agreement arising from a technology malfunction beyond its control or a total system failure.

**36.**    **Class Counsel Signatories and Parties' Authority**.  It is agreed that, because the Class Members are so numerous, it is impossible or impractical and not required to have each Class Member execute this Agreement.  The Notice and Release on Settlement Checks (Exhibits B and C hereto) will advise all Class Members of the binding nature of the Release and, if and when the Settlement Checks are signed by the Class Member, such shall have the same force and effect as if this Agreement were executed by each Class Member.  The signatories represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions of the Agreement.  Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate and execute this Agreement and to take all appropriate action required to effectuate the terms hereof and to execute any other documents required to effectuate the terms of this Agreement.

**37.**    **Counterparts**.  This Agreement may be executed in one or more counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.  Signatures sent by facsimile machine or scanned signatures in Portable Document Format sent by email shall be deemed original signatures.  All executed copies of this Agreement, and photocopies thereof, shall have the same force and effect and shall be legally binding and enforceable as the original.

**38.**    **Retained Jurisdiction**. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the settlement of this Action, and all Parties

submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement and Release.

**For Plaintiffs:**

Dated: __1-11-2018_____          _____
                                      Rickey Bell, Representative Settlement Plaintiff


Dated: _____          _____
                                      Joaquin Garcia, Representative Settlement Plaintiff


Dated: _____          _____
                                      Curtis Woodruff, Representative Settlement Plaintiff


Dated: _____          _____
                                      Tyrone Clemons, Representative Settlement Plaintiff


**For Defendants:**


**JAN RESOURCES, LLC**


Dated: _____          _____

                                      Printed Name: _____

                                      Title: _____

submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement and Release.

**For Plaintiffs:**

Dated: _____     _____

Rickey Bell, Representative Settlement Plaintiff

Dated: _____
01/11/2018

Joaquin Garcia, Representative Settlement Plaintiff

Dated: _____     _____

Curtis Woodruff, Representative Settlement Plaintiff

Dated: _____     _____

Tyrone Clemons, Representative Settlement Plaintiff

**For Defendants:**

**JAN RESOURCES, LLC**

Dated: _____     _____

Printed Name: _____

Title: _____

12

submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement and Release.

**For Plaintiffs:**

Dated: _____          _____

Rickey Bell, Representative Settlement Plaintiff

Dated: _____          _____

Joaquin Garcia, Representative Settlement Plaintiff

Dated: 1/11/2018 _____          _____

Curtis Woodruff, Representative Settlement Plaintiff

Dated: _____          _____

Tyrone Clemons, Representative Settlement Plaintiff

**For Defendants:**

**JAN RESOURCES, LLC**

Dated: _____          _____

Printed Name: _____

Title: _____

12

submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement and Release.

**For Plaintiffs:**

Dated: _____

_____
Rickey Bell, Representative Settlement Plaintiff

Dated: _____

_____
Joaquin Garcia, Representative Settlement Plaintiff

Dated: _____

_____
Curtis Woodruff, Representative Settlement Plaintiff

Dated: ___01/11/2018___

_____
Tyrone Clemons, Representative Settlement Plaintiff

**For Defendants:**

**JAN RESOURCES, LLC**

Dated: _____

_____

Printed Name: _____

Title: _____

12

submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement and Release.

**For Plaintiffs:**

Dated: _____

_____
Rickey Bell, Representative Settlement Plaintiff

Dated: _____

_____
Joaquin Garcia, Representative Settlement Plaintiff

Dated: _____

_____
Curtis Woodruff, Representative Settlement Plaintiff

Dated: _____

_____
Tyrone Clemons, Representative Settlement Plaintiff

**For Defendants:**

**JAN RESOURCES, LLC**

Dated: _____1-12-18_____

_____

Printed Name: _____James Lee_____
Title: _____Partner_____

12

Dated: ___1/14/2018___            _____
                                  Kathryn Jacobs-Heller

Dated: ___1/14/2018___            _____
                                  James Lofton

Dated: _____            _____
                                  James Lee

13

Dated: _____     _____

                               Kathryn Jacobs-Heller


Dated: _____     _____

                               James Lofton


Dated: _____     _____

                               James Lee

# Exhibit A

| Name | Total Settlement | 1099 | W2 |
|------|-----------------:|-----:|---:|
| Abraham Olude | $ 706.98 | $ 353.49 | $ 353.49 |
| Adam Mena | $ 1,045.65 | $ 522.82 | $ 522.82 |
| Alvaro Jauregue | $ 425.00 | $ 212.50 | $ 212.50 |
| Anthony Aguero | $ 3,943.51 | $ 1,971.76 | $ 1,971.76 |
| Bill Sickles | $ 3,451.33 | $ 1,725.67 | $ 1,725.67 |
| Chima Nwangwa | $ 1,610.46 | $ 805.23 | $ 805.23 |
| Cody Williams | $ 2,972.81 | $ 1,486.40 | $ 1,486.40 |
| Curtis Woodruff | $ 2,108.74 | $ 1,054.37 | $ 1,054.37 |
| Daniel Llanes | $ 207.05 | $ 103.53 | $ 103.53 |
| Daniel Lujan | $ 2,147.88 | $ 1,073.94 | $ 1,073.94 |
| Darren Smith | $ 568.84 | $ 284.42 | $ 284.42 |
| David Talamentes | $ 364.39 | $ 182.20 | $ 182.20 |
| Dylan Glenn | $ 570.59 | $ 285.29 | $ 285.29 |
| Eugene Vasquez | $ 1,105.17 | $ 552.59 | $ 552.59 |
| Freddie Smith | $ 774.80 | $ 387.40 | $ 387.40 |
| Gilberto Zepeda Jr. | $ 509.45 | $ 254.73 | $ 254.73 |
| Guadalupe Salcido | $ 1,826.88 | $ 913.44 | $ 913.44 |
| Isaac Hernandez | $ 1,072.30 | $ 536.15 | $ 536.15 |
| Jake Hargett | $ 262.64 | $ 131.32 | $ 131.32 |
| Javier Ley | $ 366.15 | $ 183.08 | $ 183.08 |
| Joaquin Garcia | $ 1,044.29 | $ 522.15 | $ 522.15 |
| Julio Cavazos | $ 1,631.68 | $ 815.84 | $ 815.84 |
| Justin (Tanner) Williams | $ 636.41 | $ 318.20 | $ 318.20 |
| Justin (Tanner) Williams | $ 749.74 | $ 374.87 | $ 374.87 |
| Justin Underwood | $ 671.28 | $ 335.64 | $ 335.64 |
| Katelyn Gerdes | $ 305.13 | $ 152.56 | $ 152.56 |
| Kazeem Fasasi | $ 359.61 | $ 179.81 | $ 179.81 |
| Kyle Poole | $ 696.34 | $ 348.17 | $ 348.17 |
| Kyle Rivera | $ 1,300.74 | $ 650.37 | $ 650.37 |
| Malik R. Muskelly | $ 2,981.41 | $ 1,490.70 | $ 1,490.70 |
| Marcelino Guerra | $ 2,011.53 | $ 1,005.77 | $ 1,005.77 |
| Maximo Barraza | $ 339.56 | $ 169.78 | $ 169.78 |
| Michael Otung | $ 38.55 | $ 19.28 | $ 19.28 |
| Miguel Garza | $ 2,569.60 | $ 1,284.80 | $ 1,284.80 |
| Miguel Natividad | $ 353.08 | $ 176.54 | $ 176.54 |
| Pius Otung | $ 1,768.40 | $ 884.20 | $ 884.20 |
| Quest Garza | $ 4,647.53 | $ 2,323.76 | $ 2,323.76 |
| Randy Ramsey | $ 275.89 | $ 137.95 | $ 137.95 |
| Raul De La Cruz | $ 3,029.77 | $ 1,514.88 | $ 1,514.88 |
| Raul R Vizcaino | $ 1,422.11 | $ 711.05 | $ 711.05 |
| Rickey Bell | $ 1,126.65 | $ 563.32 | $ 563.32 |
| Robin Aguirre | $ 261.02 | $ 130.51 | $ 130.51 |
| Robin Pena | $ 366.09 | $ 183.05 | $ 183.05 |

| | | | |
|---|---|---|---|
| Shawn Jones | $ 895.93 | $ 447.97 | $ 447.97 |
| Thomas Swinney | $ 1,615.82 | $ 807.91 | $ 807.91 |
| Trey Lockhart | $ 404.88 | $ 202.44 | $ 202.44 |
| Troy Baker | $ 833.65 | $ 416.83 | $ 416.83 |
| Tyrone Clemons | $ 1,541.67 | $ 770.84 | $ 770.84 |
| Uriel Hoffmann | $ 38.55 | $ 19.28 | $ 19.28 |
| Wilson Udo | $ 42.45 | $ 21.22 | $ 21.22 |
| | $ 60,000.00 | $ 30,000.00 | $ 30,000.00 |

| Service Payments | |
|---|---|
| Rickey Bell | $ 2,500.00 |
| Joaquin Garcia | $ 2,500.00 |
| Curtis Woodruff | $ 1,000.00 |
| Tyrone Clemons | $ 1,000.00 |

**Exhibit B Class Notice**

<Mailing Date>

Via First Class Mail
<Merge Address>

Re:    Settlement of Overtime Lawsuit against JAN Resources, LLC
       (*Bell v. JAN Resources, LLC*, No. 7:17-cv-00049
       United States District Court for the Western District of Texas)

Dear <Merge Name>,

I am pleased to announce that the overtime lawsuit against JAN Resources, LLC has reached a settlement and you are entitled to participate in this settlement.  Under the settlement, you are entitled to receive pay in the amount of **<Merge Class Member's Settlement Share Amount>,** subject to withholdings for taxes.  You are also eligible to receive a payment in the amount of **<Merge Liquidated Damages Amount>** for liquidated damages.  This letter summarizes the terms of the settlement agreement, explains your rights under the settlement agreement, and informs you what you need to do in order to claim your settlement proceeds.  Please read this letter carefully.

| 1. | Why did I receive this letter? |
|----|--------------------------------|

The United States District Court for the Western District of Texas presides over this Lawsuit against Defendants JAN Resources, LLC, Kathryn Jacobs-Heller, James Lofton, and James Lee ("Defendants" and/or "JAN").  You are receiving this letter because you were identified from JAN'S records as having worked as an operator for JAN during the period from June 5, 2014 through the date the Lawsuit settled, and having been paid on a salary and/or a day rate basis during that time.  This Lawsuit has been settled and that settlement has been approved by the Court as "fair and reasonable."  The Court has authorized us to send this letter informing you of the steps you must take if you wish to claim your settlement proceeds.

| 2. | What is the Lawsuit about? |
|----|----------------------------|

Under Federal law, certain employees are entitled to overtime pay for hours worked over 40 in a week.  This lawsuit challenged the manner in which JAN paid its operators.  In the lawsuit, the Plaintiff alleged that JAN improperly paid its operators a salary, and/or a day rate, without overtime in weeks where over 40 hours were worked.

JAN disagreed with the Plaintiff's legal claims and contended that it properly classified you as a salaried-exempt employee and paid all wages due to you.

The Court did not decide who was right or who would win the lawsuit.  By reaching a settlement, the Plaintiff and JAN reached a resolution of their disputes and all parties avoided the costs associated with further litigation and the potential risk of losing the Lawsuit.

15

| 3. | What is the settlement? |
|---|---|

The settlement is a compromise.  The settlement allows the parties to avoid the costs and risks of further litigation and appeals and it provides money to you and the other Class Members without significant delay.  In reaching a settlement, JAN denies that it violated any laws. JAN states that it entered into the settlement agreement in order to amicably resolve this dispute on mutually agreeable terms.

So that we could determine the amounts payable to the class from the net Settlement fund, JAN produced the dates of employment and payroll data for each Class Member.  We then analyzed the data to determine the amounts we believe each Class Member was owed.  The amounts for each person were added together to determine the total amount for the class.  Under the Settlement, each Class Member will receive an amount that is based upon the Class Member's proportionate share of the total amount payable to the class.  That is, if the amount payable to a Class Member is $2,000 and the total amount payable to the class is $50,000, the Class Member's proportionate share of the settlement is four percent (4%), and he will receive that percentage of the net Settlement fund.

Your gross settlement payment calculated in the Lawsuit has been divided in half, and the **net settlement amount shown on the enclosed settlement check represents both halves of the total settlement payment to you.** One half of the settlement payment is issued to you minus applicable federal, state and local tax withholdings, and will be reflected on IRS Form W-2. The other half of the settlement payment represents liquidated damages, and will be reflected on IRS Form 1099-MISC. This information is not tax advice, and you should consult your tax adviser for information on proper reporting and deduction of all income. Further, this information is not intended or written to be used, and it cannot be used, for the purpose of (i) avoiding federal tax penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing, or recommending to another party any transaction or tax-related matter addressed herein.

| 4. | How do I participate in the settlement? |
|---|---|

Enclosed with this letter is a settlement check from JAN to you.  **To obtain your share of the settlement, please review this notice and endorse the enclosed settlement check with your legal signature prior to cashing, depositing, or assigning the check.**

If you wish to participate in the settlement, you must endorse the settlement check no later than _____ **[120 Days After Mailing Date].** The settlement check is void 120 days after the date printed on the front of the check. **If you do not timely endorse and cash your settlement check, you will not be able to claim your settlement amount in this Lawsuit.**

If you do not wish to participate in the settlement, destroy your settlement check and do not endorse or deposit it.

| 5. | What do I give up by participating in the settlement? |
|---|---|

Case 7:17-cv-00049-DC     Document 21-1     Filed 01/23/18     Page 23 of 31

If you endorse your settlement check and participate in the settlement, you are agreeing to release and forever discharge JAN and all of its agents from all wage and hour claims that were pled in the Lawsuit or are reasonably related to those claims, including Fair Labors Standards Act ("FLSA") and state and common law claims. You will be releasing these claims in exchange for your Settlement Payment. Likewise, JAN will release any and all claims against you if you endorse the Settlement Check. A full list of the claims you are releasing by participating in the settlement, and a list of who is released if you participate in the settlement, is contained in the complete settlement agreement of this Lawsuit. The reverse side of your settlement check only summarizes these claims. To review the full list of claims you are releasing if you endorse the settlement check, you should contact us at the address below to receive a free copy of the complete settlement agreement in the Lawsuit.

If you currently have a pending legal claim or lawsuit against JAN other than this case or if you anticipate filing a future legal claim or lawsuit based on events that have already taken place, you should promptly consult with your attorney about this settlement and the impact this release may have on your current or anticipated legal claims or lawsuits.

By participating in this settlement, you do not waive any rights that cannot be waived by law. If you participate in this settlement, JAN will not retaliate against you, whether or not you are a current employee.

| 6. | Who are the attorneys for the Plaintiff in this case? |
|----|---|

We are John Neuman and Beatriz Sosa-Morris of Sosa-Morris Neuman Attorneys at Law, the attorneys for the Plaintiff and the class in this Lawsuit. Our contact information is as follows:

John Neuman (jneuman@smnlawfirm.com)
Beatriz Sosa-Morris (bsosamorris@smnlawfirm.com)

Sosa-Morris Neuman Attorneys at Law
5612 Chaucer Dr.
Houston, Texas 77005
Phone: 281-885-8844
Fax: 281-885-8813

Feel free to contact us as your attorneys about any questions you may have with the settlement.

| 7. | Conclusion |
|----|---|

This letter summarizes the most important aspects of the Settlement. You may obtain a free copy of the entire settlement agreement as well as the underlying Court pleadings by contacting us at the address listed above.

17

It has been our privilege to represent your interests in this Lawsuit. If you have any questions about this Settlement, please do not hesitate to give us a call. We are always available to talk with you.

Sincerely,

/s/ John Neuman
John Neuman

**Exhibit C: Release Language**

By endorsing this Settlement Check, I hereby voluntarily agree to join the Settlement Class certified in *Rickey Bell, et al. v. JAN Resources, LLC, et. al.,,* Civil Action No. 7:17-cv-49, accept the amount of this Settlement Check in settlement, and release JAN Resources, LLC, and its officers, agents, and related parties from all claims pled in this Action and all claims (known and unknown) under the Fair Labor Standards Act, statutory law, and common law for unpaid wages and hours of work, including overtime, actual damages, liquidated damages, attorneys' fees, interest, and penalties. I understand that by endorsing this Settlement Check I am giving up important legal rights. I have had an opportunity to review the Settlement Agreement in this Action, and specifically agree to release all claims identified in the Settlement Agreement.

**Exhibit D**

**RELEASE AND WAIVER AGREEMENT REPRESENTATIVE**
**SETTLEMENT PLAINTIFFS**

This release and waiver agreement ("Release Agreement") confirms the terms of your, Rickey Bell, Joaquin Garcia, Curtis Woodruff, and Tyrone Clemons ("you" or "Representative Settlement Plaintiffs") release of claims against the ("Company") as agreed by the settlement agreement in the matter of *Rickey Bell v. JAN Resources, LLC*, No. 7:17-cv-49 (the "Action"), in the United States District Court for the Western District of Texas, Midland Division.

1.      **Consideration.**   In exchange for the promises made by the Representative Settlement Plaintiffs and in consideration for all the terms entered into by the Representative Settlement Plaintiffs in this Release Agreement, the Company agrees to issue to a one-time payment for the following amounts: $2,500 to Rickey Bell, $2,500 to Joaquin Garcia, $1,000 to Curtis Woodruff, and $1,000 to Tyrone Clemons.  This consideration will be issued only upon the signing this Release Agreement by the Representative Settlement Plaintiffs and returning it to counsel for the Company and the conclusion of the seven (7) day revocation period without your revoking the Release Agreement, as fully described in Paragraph 4. You agree that this consideration is something of value and that you are not already entitled to receive this additional consideration.

2.      **Tax Obligations.**   You are solely responsible for any and all tax obligations or other obligations under federal and/or state law pertaining to the receipt of the additional compensation in this Release Agreement, and you hereby agree to hold the Company harmless from any and all liability relating to such obligations.

3.      **No Further Compensation.**   You are not entitled to any compensation or other consideration at any future date as a result of the Lawsuit, except the payment to be issued in the Action to you as an individual Class Member, as applicable, and, if you comply with the terms stated in this Release Agreement, the consideration described in Paragraph 1.  You also agree that you have been paid what you are owed in connection with any severance or deferred compensation plan, if eligible, and that you have been given all time off to which you were entitled under any policy or law, including but not limited to leave under the Family and Medical Leave Act.  You agree that the consideration offered in this Release Agreement in exchange for your release of claims and rights is sufficient.

4.      **Rights to Review and Revoke.**   Before signing this Release Agreement, you should make sure that you understand what you are signing, what benefits you are receiving, and what rights you are giving up, including your rights under the Age Discrimination in Employment Act. You should also consult an attorney about the contents and meaning of this Release Agreement. You have at least twenty-one (21) days to consider this Release Agreement and its terms, which will expire if not executed by January 30, 2018. You must deliver the timely executed Release Agreement to Counsel for the Company, Charles Sturm, Sturm Law, PLLC 712 Main St. Ste. 900 Houston, Texas 77002, by January 30, 2018. You and the Company agree that material or immaterial changes in this Release Agreement do not restart the running of this period of at least twenty-one (21) days. Also, after you have signed the Release Agreement, you may revoke the Release Agreement at any time within seven (7) days of your signing it by delivering written notice of your revocation to Counsel for the Company, Charles Sturm, Sturm Law, PLLC 712

<u>Main St. Ste. 900 Houston, Texas 77002.</u>  The additional compensation being offered to you will be paid within thirty (30) after the seven (7) day period concludes, if you do not revoke the Release Agreement.

      **5.**      **Release and Waiver.**  In exchange for providing you with the additional consideration described in Paragraph 1, you agree to fully release the Company (i) Defendants; (ii) any current or former subsidiary, parent company, successor, assign, or division of Defendants; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, attorney, or employee benefit or welfare program or plan (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subsection (i) or (ii) in this section (collectively, the "Released Parties") from any claims you may have against the Company or any Released Party as of the date you sign this Release Agreement, whether such claims arise from common law, statute, regulation, or contract.  Likewise, the Company releases you from any and all claims it may have against you.  Your release includes but is not limited to claims of whatever kind and nature, character, and description arising out of state, federal, or local law, or emanating from statute, executive order, regulation, code, common law or other source including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing, whether known or unknown, and whether anticipated or unanticipated, arising from any fact, condition, circumstance, or occurrence whatsoever occurring at any time up to and including the effective date of this Release Agreement, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise including, but not limited to, any claims arising out of your employment with the Company or your separation from employment and all claims that the Released Parties:

    **(a)**    violated public policy or common law (including, but not limited to, claims for defamation, breach of contract, intentional or tortious interference with contract or business relations, fraud, misrepresentation, conversion, promissory estoppel, detrimental reliance, wrongful termination, retaliatory discharge, assault, battery, personal injury, negligence, negligent hiring, retention or supervision, invasion of privacy, conspiracy, intentional or negligent infliction of emotional distress and/or mental anguish, or loss of consortium); or

    **(b)**    violated the Company's personnel policies, procedures, or handbooks, violated any covenant of good faith and fair dealing, or violated any purported contract of employment, express or implied, between you and the Company; or

    **(c)**    failed to provide you with any benefits pursuant to the terms of any employee benefit plan maintained, administered, sponsored, funded, and/or paid, in whole or in part, by the Company; violated the terms of any such employee benefit plan; breached any fiduciary obligation with respect to such plan; discriminated against you for the purpose of preventing you from obtaining benefits pursuant to the terms of any such plan; or in any way violated any provision of the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.*;

(d)   retaliated against or discriminated against you on the basis of national origin, race, color, ancestry, sex (including sexual harassment), pregnancy, religion, disability, handicap, age, sexual orientation, marital status, parental status, source of income, or any other basis in violation of any city, local, state or federal laws, statutes, ordinances, executive orders, regulations or constitutions, or otherwise violated any city, local, state, or federal laws, statutes, ordinances, executive orders, regulations or constitutions including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (effective only upon Court approval of this individual Release Agreement)*,* the Equal Pay Act, 29 U.S.C. § 206(d), the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

**6.     Rights Reserved.**  This Release Agreement does not prevent you from filing an administrative charge or participating in an investigation before any governmental agency charged with enforcement of any law, including, but not limited to, the Equal Employment Opportunity Commission, any similar state or local agency, or the National Labor Relations Board. By signing this Release Agreement, however, you waive any right to recover monetary damages or other individual relief in connection with any such charge you file or investigation in which you participate. This Release Agreement does not prevent you from pursuing any workers' compensation benefits to which you may be entitled. This Release Agreement does not prevent you from engaging in any concerted activity for the purpose of collective bargaining or other mutual aid and protection.

**7.     Claim Representations.**  In signing this Release Agreement, you represent truthfully that you have not filed, caused to be filed, and are not presently a party to any claim against the Company or any Released Party, except the Action.

**8.     No Assignment.**  You agree that you are the only person who is able to assert any right or claim arising out of your employment with or separation from the Company. You promise that you have not assigned, pledged or otherwise sold such rights or claims, nor have you relied on any promises other than those contained in this Release Agreement and the Agreement the Action, other than to your counsel.

**9.     No Admission of Liability.**  You agree that neither this Release Agreement nor the payment of the additional compensation offered to you for this Release Agreement is an admission by the Company of any liability or unlawful conduct of any kind.

**10.     Neutral Reference.**  If you need references regarding your employment with the Company, you will direct any request to the Director of Human Resources for the Company, who will state that it is the policy of the Company only to confirm your title and dates of employment with the Company, and upon written release from you, your compensation as of your Separation Date.

**11.     Mutual Non-Disparagement.**  Both you and the Company agree not to disparage each other or to do anything that portrays each other, including the Company, its services, products, or personnel in a negative light or that might injure the Company's business or affairs

22

or the Representative Settlement Plaintiffs' ability to get gainful employment. This would include, but is not limited to, disparaging remarks about each other. Nothing in this paragraph affects the Representative Settlement Plaintiffs' rights under Paragraph 6 in this Release Agreement, entitled "Rights Reserved." The Company also agrees that its Officers and Directors shall not make any disparaging remarks against you.

**12.    Damages for Breach.**  You agree that, if you violate the terms of this Release Agreement, you will reimburse the Released Parties for any attorneys' fees, costs, or other damages arising from your breach of the Release Agreement, unless you are challenging your waiver of claims under the Age Discrimination in Employment Act.

**13.    Entire Agreement; Severability.**  In signing this Release Agreement, you have not relied on any statement or promise except those in the Release Agreement. This Release Agreement sets forth the entire agreement between you and the Company and supersedes any other written or oral understandings, except that you agree that this Release Agreement does not alter: (i) any agreements or promises you made prior to or during your employment with the Company concerning intellectual property, confidentiality, non-solicitation, or non-competition; (ii) the settlement agreement in the Action; or (iii) your individual release of claims through the class notice process in this Action. You agree that if any portion of this Release Agreement is found to be unenforceable, the remainder of the Release Agreement will remain enforceable.

**14.    Governing Law and Choice of Venue.** This Release Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas without reference to its principles of conflict of law. You and the Company consent and submit to the jurisdiction of the state and federal courts for Harris County, Texas in connection with any lawsuits or other actions arising with regard to this Release Agreement.

**15.    No Modification.**  Any modifications to this Release Agreement do not become part of this Release Agreement unless expressly agreed to in writing by you and the Company.

**16.    Counterparts.**  This Release Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall together be one and the same agreement. You and the Company agree that signatures transmitted by facsimile or electronic mail will be deemed originals and that a facsimile, photocopy, or scanned image of this Release Agreement, including without limitation counterparts and any signature(s) or other marks thereon, shall be admissible in any legal, administrative, or other proceeding related to this Release Agreement with the same weight and binding effect as an original.

**17.    Execution.**  If this Release Agreement fully and accurately describes the complete agreement concerning your agreement to release the Released Parties for any acts occurring on or prior to the date you sign this Release Agreement, please sign and date this Release Agreement below and return it to the Company as described in Paragraph 4.

### Acknowledgment of Knowing and Voluntary Release and Waiver

I HAVE CAREFULLY READ THIS WAIVER AND I FULLY UNDERSTAND ALL OF THE PROVISIONS OF THIS RELEASE AND WAIVER.

I HAVE BEEN ENCOURAGED AND ADVISED IN WRITING TO SEEK ADVICE FROM COUNSEL OF MY CHOOSING REGARDING THIS RELEASE AND WAIVER. PRIOR TO

SIGNING THIS RELEASE AND WAIVER, I HAVE BEEN GIVEN THE OPPORTUNITY AND SUFFICIENT TIME TO SEEK SUCH ADVICE.

IN SIGNING THIS RELEASE AND WAIVER, I AM NOT RELYING ON ANY REPRESENTATION OR STATEMENT (WRITTEN OR ORAL) NOT SPECIFICALLY SET FORTH IN THIS RELEASE AND WAIVER BY THE COMPANY OR ANY OF ITS REPRESENTATIVES WITH REGARD TO THE SUBJECT MATTER, BASIS, OR EFFECT OF THIS RELEASE AND WAIVER OR OTHERWISE.

I WAS NOT COERCED, THREATENED, OR OTHERWISE FORCED TO SIGN THIS RELEASE AND WAIVER. I AM VOLUNTARILY SIGNING AND DELIVERING THIS RELEASE AND WAIVER OF MY OWN FREE WILL.

I UNDERSTAND THAT BY SIGNING THIS RELEASE AND WAIVER I AM GIVING UP RIGHTS I MAY HAVE. I UNDERSTAND I DO NOT HAVE TO SIGN THIS RELEASE AND WAIVER.

THIS RELEASE AGREEMENT MUST BE SIGNED BY YOU AND DELIVERED TO COUNSEL FOR THE COMPANY ON OR BEFORE <u>JANUARY 30, 2018</u> IN ORDER TO RECEIVE THE ADDITIONAL CONSIDERATION DESCRIBED IN IT.

**REPRESENTATIVE SETTLEMENT PLAINTIFFS:**

Dated: 1-15-18

_____
Rickey Bell, Representative Settlement Plaintiff

Dated: January. 19,2018

_____
Joaquin Garcia, Representative Settlement Plaintiff

Dated: 1/12/2018

_____
Curtis Woodruff, Representative Settlement Plaintiff

Dated: 01/12/2018

_____
Tyrone Clemons, Representative Settlement Plaintiff

24

**THE COMPANY:**

**JAN RESOURCES, LLC**

Dated: _____    _____

Printed Name: _____

Title: _____